ORIGINAL

1  LAW OFFICES OF STEVEN C. VONDRAN, P.C.
   Steven C. Vondran, Esq. (SBN 232337)
2  620 Newport Center Drive, Suite 1100
   Newport Beach, CA 92660
3  Phone: (949) 689-8752
   Fax: (949) 209-0358
4  Email: Steve@VondranLaw.com

5  Attorney for Debtor: Deanna Eileen Rachlin

```
FILED

JUN 07 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:              Deputy Clerk
```

6

7                 UNITED STATES BANKRUPTCY COURT

8            FOR THE CENTRAL DISTRICT OF CALIFORNIA

9   In Re:                            )
10  DEANNA EILEEN RACHLIN             )   Case No: 2:10-BK-24246-RN
        Debtor                        )
11  ----------------------------      )   **DEBTORS MOTION IN OPPOSITION TO**
                                      )   **DEUTSCHE MOTION FOR RELIEF**
12                                    )   **FROM THE AUTOMATIC STAY IN**
    DEUTSCHE BANK NATIONAL TRUST      )   **BANKRUPTCY AND MEMORANDUM**
13  COMPANY, AS TRUSTEE OF THE        )   **OF POINTS AND AUTHORITIES**
    INDYMAC INDX MORTGAGE LOAN        )
14  TRUST 2006-AR14, MORTGAGE PASS-   )   ORAL ARGUMENT REQUESTED
    THROUGH CERTIFICATES, SERIES 2006-)
15  AR14 UNDER THE POOLING AND        )   Hearing Date: 6/8/10
    SERVICE AGREEMENT DATED           )   Time: 9:00 a.m.
16  OCTOBER 1, 2006.                  )   Ctrm: 1645
        Movant                        )   Floor: 16th
17                                    )
18                                    )
                                      )
19  v.                                )
                                      )
20  DEANNA EILEEN RACHLIN             )
        Debtor                        )
21                                    )
                                      )
22  And                              )
                                      )
23  ELISSA MILLER, CHAPTER 7 TRUSTEE  )
                                      )
24                                    )
                                      )
25                                    )

26                    **TABLE OF CONTENTS**

27

28

                      TABLE OF CONTENTS

                                                                    Pages

I.  Background...........................................................................................3

II. Statement of Facts.................................................................................3

III. Memorandum of Points and Authorities.......................................................5

Legal Arguments:

(i). **Deutsche Has Not Demonstrated That It Has The Right To Enforce The Note as it has not alleged, produced, or discussed having possession of the original promissory note at issue or a viable excuse for not producing such, and as such it lacks standing to file the motion to lift the stay and its motion must therefore be denied**.................................8


(ii). **Deutsche Has Not Demonstrated That It Has The Right To Enforce The Note as it has not alleged, produced, or discussed having possession of the original promissory note at issue or a viable excuse for not producing such, and as such it is not the real party in interest and their motion to lift the stay must be denied**...........................................12


(iii). **Even assuming arguendo that Deutsche can demonstrate That It Has The Right To Enforce (it has the original or satisfies Evidence Code Rule 1004) Deutsche lacks standing, and is not the real party in interest because it has no right to foreclose on the security**......12


(a) **Deutsche has not perfected its security interest in Debtor's property because MERS' purported assignment of the Deed of Trust on 4/30/10 was in violation of the automatic stay, and such attempt to perfect their interest is prohibited by law**.......................13

TABLE OF CONTENTS

(b) **The purported assignment of the Deed of Trust from MERS to Deutsche Bank was a mere assignment of a Deed of Trust (without the note also being assigned) and such attempted act is a legal nullity and without legal significance**...........................14

MERS has no ability to assign a Deed of Trust...................................…..…........15

Deutsche's other attachments to the Motion to Lift the stay do not establish any other valid proof of loan ownership.......................................................…..…........18

IV. Conclusion.....................................................…..…........19

TABLE OF CONTENTS

1

# TABLE OF AUTHORITIES

2

3    **Cases**                                                                          **Page(s)**

4    Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 113 S.Ct. 1489,
     U.S.Tenn.,(1993)……………..…......……...........................................................................1

5    In re Maisel, 378 B.R. 19 (Bankr. Mass. 2007); In re Foreclosure Cases, 2007 WL Ohio 2007)..2

6    In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio 2007)………………………….2

7    In re King, No. 08-13152-SSM, (Bankr. E.D. Va. 2009)………………………………….5

8    In re Wilhelm, 407 B.R. 392 (Bankr. D. Idaho 2009)…………………………………….6

9    Warth v. Seldin, 422 U.S. 490, (1975)…….......……….............………………………….6

10   Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992)……………………………7

11   Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007)………………………7

12   In re Smith, 419 B.R. 622, 628 (Bankr. E.D. Va. 2008)…………………………………..7

13   In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. 2008)……………………………………...7

14   In Re Aniel, 2010WL1609923 (N.D. California 2010)……………………………….....…8

15   In re Weisband, Case No. 4:09-bk-05175-EWH (Bankr. Ariz., March 29, 2010)…………11

16   Rein v. Providian Fin. Corp. 270 F.3d 895 (9th Cir. 2001)……………………………......13

17   Contractors' State License Bd. Of Cal. v. Dunbar, 245 F.3d 1058 (9th Cir. 2001)…………13

18   Omega Environmental Inc. v. Valley Bank NA 219 F.3d 984 (9th Cir. 2000)…………….14

19   Hill v. Favour, 84 P.2d 575 (Ariz.1938)…………………………………………………..14

20   Domarad v. Fisher & Burke, Inc., 76 Cal.Rptr. 529 (Cal.Ct.App.1969)…………………14

21   In re Leisure Time Sports, 194 B.R. 859 (9th Cir. B.A.P. 1996)…………………………14

22   In re Atlantic Mortg. Corp., 69 B.R. 321 (Bankr.E.D.Mich.1987)………………………15

23   Landmark National Bank v. Kessler, 40 Kan. App. 2d 325, 192 P.3d 177 (2008)…………16

24   In re Tax Appeal of Scholastic Book Clubs, Inc., 260 Kan. 528, 534, 920 P.2d 947 (1996)….....17

25   MERS v. Southwest Homes of Arkansas, 2009 Ark. LEXIS 458 (Ark., Apr. 23, 2009)…….....17

26   Hot Stuff, Inc. v. Kinko's Graphic Corp., 50 Ark. App. 56, 59, 901 S.W.2d 854, 856 (1995)….17

TABLE OF AUTHORITIES - DEBTORS OPPOSITION TO MOTION FOR RELIEF FROM STAY

## Statutes

Fed.Rules Bankr.Proc.Rule 9006(b)(1), 11 U.S.C.A ...................................................1

11 U.S.C. § 362(a)...................................................................................3

11 U.S.C. § 362(d)(1)................................................................................3

11 U.S.C. § 362(d)(2)................................................................................3

Federal Rule of Civil Procedure 17..................................................................6

Federal Rule of Civil Procedure 17(a)(1)............................................................8

Cal. Comm. Code § 3301...............................................................................9

Cal. Comm. Code § 1201(B)(21)(a)....................................................................9

Cal. Comm. Code § 3205...............................................................................9

Evidence Code Rule 1004.............................................................................10

Cal. Comm. Code § 3412.............................................................................10

11 U.S.C. § 502(b)(1)...............................................................................12

Cal. Civ. Code section 2932.5......................................................................12

11 U.S.C. Section 362(a)(4)-(6)....................................................................13

## Other

James R. Barth et al., A Short History of the Subprime Mortgage Market Meltdown 5 (Milken

Institute 2008)......................................................................................4


Mortgages, Deed of Trust and Foreclosure Litigation, (Fourth Edition), Roger Bernhardt, (2009),

Section 7.106......................................................................................11


55 Am. Jur. 2d, Mortgages § 1002..................................................................15

1  LAW OFFICES OF STEVEN C. VONDRAN, P.C.
   Steven C. Vondran, Esq. (SBN 232337)
2  620 Newport Center Drive, Suite 1100
   Newport Beach, CA 92660
3  Phone: (949) 689-8752
   Fax: (949) 209-0358
4  Email: Steve@VondranLaw.com

5

   Attorney for Debtor: Deanna Eileen Rachlin
6

7              UNITED STATES BANKRUPTCY COURT

8        FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10 | In Re:                              ) Case No: 2:10-BK-24246-RN
   | DEANNA EILEEN RACHLIN               )
11 |     Debtor                          ) **DEBTORS MOTION IN OPPOSITION TO**
   |                                     ) **DEUTSCHE MOTION FOR RELIEF**
12 | ----------------------------------- ) **FROM THE AUTOMATIC STAY IN**
   |                                     ) **BANKRUPTCY AND MEMORANDUM**
13 | DEUTSCHE BANK NATIONAL TRUST        ) **OF POINTS AND AUTHORITIES**
   | COMPANY, AS TRUSTEE OF THE          )
14 | INDYMAC INDX MORTGAGE LOAN          ) ORAL ARGUMENT REQUESTED
   | TRUST 2006-AR14, MORTGAGE PASS-     )
15 | THROUGH CERTIFICATES, SERIES 2006-  ) Hearing Date: 6/8/10
   | AR14 UNDER THE POOLING AND          ) Time: 9:00 a.m.
16 | SERVICE AGREEMENT DATED             ) Ctrm: 1645
   | OCTOBER 1, 2006.                    ) Floor: 16th
17 |     Movant                          )
18 |                                     )
   |                                     )
19 | v.                                  )
20 |                                     )
   | DEANNA EILEEN RACHLIN               )
21 |     Debtor                          )
22 |                                     )
   | And                                 )
23 | ELISSA MILLER, CHAPTER 7 TRUSTEE    )
24 |                                     )
25 |                                     )

26  **DEBTOR'S OPPOSITION TO DEUTSCHE BANK NATIONAL TRUST**
   **COMPANY, AS TRUSTEE OF THE INDYMAC INDX MORTGAGE LOAN TRUST**
27 **2006-AR14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR14**
   **UNDER THE POOLING AND SERVICE AGREEMENT DATED OCTOBER 1, 2006**
28 **("DEUTSCHE") MOTION FOR ORDER LIFTING THE AUTOMATIC STAY**

---

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

Page 1

Debtor Deanna Eileen Rachlin respectfully opposes Deutsche's motion to lift automatic stay filed on a 4/30/2010 and served on the same date. The motion should be denied because Deutsche, based on the record before the Court, has not established that it is a creditor of the instant bankruptcy estate and is not entitled to enforce the subject debt.  In addition to Duetsche's lack of standing, its lift-stay motion fails to satisfy both procedural and substantive requirements applicable to this proceeding.

It must be pointed out that Debtor's opposition to the lift-stay motion is being filed with late notice because of excusable neglect and inadvertence. Debtor had been seeking second opinions from Attorneys familiar with securitized loans, and was only able to retain legal counsel for purposes of challenging the lift-stay motion only recently. The number of bankruptcy counsel practicing in this area of securitized loans / bankruptcy is extremely limited.  Counsel was retained only recently on June 4, 2010.  As such, Debtor respectfully requests that in the interests of due process, and in the interest of justice, and given the nature of the objections being set forth in this opposition, and given the gravity of the real property interest at stake, that the Court allow this motion to be heard on its merits irrespective of the timeliness of the response. See Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 113 S.Ct. 1489, U.S.Tenn.,(1993). Rule authorizing bankruptcy court to accept late filings where failure to act is result of "excusable neglect," contemplates that courts are permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond party's control. Fed.Rules Bankr.Proc.Rule 9006(b)(1), 11 U.S.C.A.

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

# I.
# BACKGROUND

Today, more and more homeowners turn to the bankruptcy system for protection when facing financial hardship and impending foreclosure. It is bankruptcy courts' responsibility to ensure that these debtors receive the full protection of the Bankruptcy Code, including the benefit of the automatic stay, for as long as the debtors are entitled to it.

Unfortunately, contemporaneously with the increase in foreclosures, there is an increase in lenders and entities posing as lenders who, in their rush to foreclose, haphazardly fail to comply even with the most basic legal requirements of the bankruptcy system. It is the movant's responsibility to comply, and this Court's responsibility to ensure compliance, with both substantive and procedural requirements of the Bankruptcy Code, the federal rules, and other applicable law. See, e.g., In re Maisel, 378 B.R. 19 (Bankr. Mass. 2007); In re Foreclosure Cases, 2007 WL Ohio 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio 2007).

# II.
# STATEMENT OF FACTS

**The Note and the Deed of Trust**

On August 16, 2006, Debtor Deanna E. Rachlin, executed and delivered to Quicken Loans, Inc. ("Quicken") a 3-page, fixed-rate (Interest-First) promissory note in the principal sum of $510,000.00 ("Note") secured by a Deed of Trust on real property located at *1933 Rosemount Avenue, Claremont, California 91711*. Page 3 of the note contained Debtor Deanna Rachlin's un-notarized signature. See attached **Exhibit "A"** (copy of the Note as provided to Debtor via moving Party's motion to lift the automatic stay), which is incorporated herein by reference.

The last page of the Note produced by Deutsche contained a *stamp* with words "WITHOUT RECOURSE / PAY TO THE ORDER OF / _____ / QUICKEN

---

LOANS, INC. This stamp was undated. In other words, the note copy produced by Deutsche

consisted of 3 pages and contained what appears to be a *blank endorsement* by Quicken (thus

evidencing a transfer of the note by Quicken to some other undisclosed entity). There is no way

to tell for sure how many copies of this note were stamped or made with the undated Quicken

stamp. These are the three pages the Court *may* see if it examines the *original note as opposed

to a copy.*

The Deed of Trust accompanying the Note was signed and notarized by Debtor Deanna

E. Rachlin on August 16, 2006 and subsequently recorded in Los Angeles, California on August

21, 2006. The Deed of Trust lists Quicken Loans, Inc. as the "Lender," and Mortgage Electronic

Registration Systems, Inc. ("MERS") as "the beneficiary" of the Deed of Trust "solely as

nominee for Lender and Lender's successors and assigns." See **Exhibit "B"** attached herein

which is a copy of the Deed of Trust attached to Deutsche's motion and which is incorporated

herein by reference.

The Deed of Trust was given by Debtor Deanna Rachlin (and Joint Borrower Carolyn

Valdez) and Orange Coast Title Co. as Trustee, ostensibly for the benefit of [MERS] as

beneficiary. Quicken has transferred any interest it has in the loan by endorsing the note in

Blank, which Deutsche claims makes it the owner of the loan by attaching a mere copy of this

"stamped" note and a copy of the 8/21/06 recorded Deed of Trust.

Whenever a loan contains a statement that MERS is the "beneficiary" of a loan (as is the

case here), the resulting loan is likely a securitized loan that is securitized and sold to bond

investors on Wall Street. *See, e.g.,* James R. Barth et al., *A Short History of the Subprime

Mortgage Market Meltdown* 5 (Milken Institute 2008), *available

at* http://www.milkeninstitute.org/publications (showing % of securitized mortgages by issue date).

---

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

**Bankruptcy Events**

Sometime after execution of the note in 2006, Debtor fell in default of their obligation under the Note. A Notice of Default was filed on April 6, 2010. On April 13, 2010, Debtor filed a Chapter 7 petition and sought the protection of the bankruptcy Court. **On or around April 26, 2010, (after Debtor had filed bankruptcy and the automatic stay was in effect) MERS proceeded to attempt to assign the Deed of Trust to Deutsche (presumably pursuant to Deutsche's request or at the request of Meridian Foreclosure Services, Deutsche's agent authorized to conduct the foreclosure sale) in an apparent attempt to *perfect* Deutsche's lien and interest in Debtor's property prior to Deutsche Bank filing its Motion for Relief from automatic stay, (which Deutsche filed just four days later on April 30, 2010). This attempted assignment is a legal nullity, and is a knowing and willful violation of the Bankruptcy automatic stay and was made to give the appearance that Deutsche owns the loan at issue and has the right to lift the automatic stay and foreclose on Debtor's property.** The attempted assignment was attached as an exhibit to Deutsche's motion for relief from stay and is attached hereto as **Exhibit "C"** and is incorporated herein by reference.

In light of the above facts, including a failure by Deutsche to allege, prove, or establish that Deutsche has a copy of the original promissory note, Debtors oppose Deutsche's lift-stay motion. For the reasons stated fully below, the lift-stay motion should be denied in all respects.

## III.
## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Standard of Law

It is axiomatic that, in coming to federal court to enforce an alleged right, movant Deutsche must comply with the applicable procedures of the federal court and applicable law. As one Court put it: "it is not sufficient that the debtor owes *someone* money; the issue

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

Page 5

is whether the debtor (and hence the bankruptcy estate) owes it to the party filing the proof of

claim [or lift-stay motion]." See In re King, No. 08-13152-SSM, (Bankr. E.D. Va. 2009)

(emphasis in original).

**B. Law and Rules Governing Lift-Stay Motions**

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition

operates as a stay of collection and enforcement actions. 11 U.S.C. § 362(a). The purpose of the

automatic stay is "to give the debtor a breathing spell and to prevent a race by creditors against

the debtor's assets until such time as the bankruptcy court can sort out the respective interests of

the debtor, the bankruptcy estate, and creditors."

Section 362(d) allows the court, upon request of a "*party in interest,*" to grant relief from

the stay, "such as terminating, annulling, modifying, or conditioning such stay." 11 U.S.C. §

362(d)(1). The court may grant relief "for cause, including the lack of adequate protection." *Id.*

The court may also grant relief from the stay with respect to specific property of the estate if the

debtor lacks equity in the property and the property is not necessary to an effective

reorganization. 11 U.S.C. § 362(d)(2).

**C. "Standing" And "Real Party In Interest"**

Since a movant seeking relief from stay is seeking to exercise a right stayed by § 362(a), a

movant for relief from stay bears the burden of proof that it has standing to bring the motion and

that it is the real party in interest. See, e.g., In re Wilhelm, 407 B.R. 392 (Bankr. D. Idaho 2009).

"To obtain stay relief, each Movant must have **standing, and be the real party in interest** under

Federal Rule of Civil Procedure 17." *Id.* at 398.

"Standing" and "real party in interest" are concepts that are related but not identical.

Standing encompasses two major components: "***constitutional limitations on federal court***

***jurisdiction and prudential limitations on its exercise,***" Warth v. Seldin, 422 U.S. 490, 498

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

1  (1975), while "real party in interest" is generally part of "standing," as discussed below.

2  **Constitutional standing** concerns whether the plaintiff's personal stake in the lawsuit is

3  sufficient to have a "case or controversy" to which the federal judicial power may extend under

4  Article III. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).

5  
6      **Prudential standing** includes the idea that a party must assert its own claims, rather than

7  another's. *See, e.g., Warth*, 422 U.S. at 499. The purpose of this rule is to require that an action

8  be brought in the name of the party who possesses the substantive right being asserted under the

9  applicable law. *Smith*, 419 B.R. at 629. Thus, the requirement of Fed. R. Civ. P. 17, made

10  applicable to stay relief motions by Rule 9014, "generally falls within the prudential standing

11  
12  doctrine." In re Wilhelm, 407 B.R. at 398.

13      Finally, to obtain relief in federal court, a party must meet both the constitutional

14  requirements (Article III) and the prudential requirements (including **"real party in interest"**)

15  
16  of standing. See, e.g., Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007).

17      As other Courts have noted, "it is axiomatic that in federal courts a claim may

18  *only* be asserted by the *real party in interest*. Rule 7017 of the Federal Rules of Bankruptcy

19  
20  Procedure incorporates the provisions of Rule 17 of the Federal Rules of Civil Procedure. . . .

21  The purpose of Rule 17 is to ensure that *the person bringing a lawsuit has the right to enforce*

22  *the asserted claim*." In re Smith, 419 B.R. 622, 628 (Bankr. E.D. Va. 2008).

23      Importantly, as a general rule, a person who is an attorney-in-fact or an agent solely for

24  the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be

25  
26  required to litigate in the name of his principal rather than in his own name. See, e.g., In re

27  Hwang, 396 B.R. 757 (Bankr. C.D. Cal. 2008) (quoting 6A Wright, Miller & Kane, Federal

28  Practice and Procedure: Civil 2d § 1553).

---

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

In the instant proceeding, Debtors challenge Deutsche's status as a party having

constitutional standing under Article III or having prudential standing as a "real party in

interest" under FRCP 17 in the context of a 11 U.S.C. § 362 proceeding.

## D. LEGAL ARGUMENT

### DEUTSCHE DOES NOT HAVE STANDING TO BRING THE LIFT-STAY MOTION.

**(i). Deutsche Has Not Demonstrated That It Has The Right To Enforce The Note as it has not alleged, produced, or discussed having possession of the original promissory note at issue or a viable excuse for not producing such, and as such it lacks standing to file the motion to lift the stay and its motion must therefore be denied.**

Mortgage notes are commercial paper (whether negotiable or non-negotiable) covered by

the Uniform Commercial Code as adopted by each of the Fifty States, including California. In

order to have a right to enforce the note, a party must have possession of the original note. If

they do not, they don't have proper standing and are not a real party in interest to a case.

In the case of In Re Aniel, 2010WL1609923 (N.D. California 2010), the Court discussed

these concepts by saying: "In the past year or two, several bankruptcy courts have published

decisions regarding the standing of creditors and servicing agents acting on the creditors' behalf

to prosecute motions for relief from stay. See, e.g., In re Wilhelm, 407 B.R. 392 (Bankr. D. Id.

2009); In re Jacobson, 402 B.R. 359 (Bankr. W.D. Wash. 2009); In re Hwang, 396 B.R. 757

(Bankr. C.D. Cal. 2008). In general, these cases apply Federal Rule of Civil Procedure 17(a)(1)

(incorporated by Rule 7017, which is in turn made applicable to motions for relief from stay by

Rules 4001(a)(1) and 9014), which provides that **an action "must be prosecuted in the name**

**of the real property in interest."** The real property in interest in a relief from stay motion is a

party entitled to enforce the right being asserted under applicable law. Jacobson, 402 B.R. at 366.

---

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

Addressing the principles of "real party in interest" and standing in the context of motions

for relief from the automatic stay, the <u>Wilhelm</u> court held that movants must show that they have

"*an interest in the relevant note*" and they have been "*injured by debtor's conduct (presumably*

*through a default on the note)*." <u>Wilhelm</u>, 407 B.R. at 398. "Beyond that, [m]ovants must also

show <u>they have the right</u>, under applicable substantive law, <u>to enforce the notes</u>."

In <u>Wilhelm</u>, the court identified two threshold questions for establishing standing: (1)

Has the movant established an interest in the relevant promissory note? (2) Is the movant entitled

to enforce the notes?  To resolve these critical threshold questions of standing, **the courts have**

**looked to the state law governing negotiable instruments to determine whether an alleged**

**creditor has the power and legal right to enforce a note.** See <u>Hwang</u>, *396 B.R. at 762.*

*In California, section 3301 of the Commercial Code governs who is entitled to enforce a*

*note*: This section states that a "Person entitled to enforce" an instrument means (a) *the holder*

of the instrument, (b) a nonholder *in possession* of the instrument who has the rights of a holder,

or (c) a person not in possession of the instrument who is entitled to enforce the instrument

pursuant to Section 3309 or subdivision (d) of Section 3418.

Cal. Comm. Code § 3301 requires that a "*holder*" of a note is "*the person in possession* of

a negotiable instrument that is payable either to bearer or, to an identified person that is the

person in possession." See *Cal. Comm. Code § 1201(B)(21)(a)*. When endorsed in blank, an

instrument becomes payable to bearer and may be negotiated by transfer of *possession* alone.

Cal. Comm. Code § 3205.  Again, there must be physical possession of the relevant note which

has not been established, much less alleged here.  **In other words, an alleged creditor moving**

**for relief from stay should establish a prima facie case that they have standing to enforce**

---

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

**the underlying note or obligation by showing possession of an original copy of the note.**

Other Courts in California have similarly required that AN ORIGINAL COPY OF THE NOTE MUST be shown in order to establish a prima facie case that an alleged Creditor of a loan has a right to enforce the note, and thus has standing to bring a lift-stay motion evidencing that it is the real party in interest. For example, Judge Bufford of the Central District Bankruptcy Court in California has established the following mandate to alleged creditors seeking to file lift-stay motions in his Court by posting the following notice in its Court:

## NOTICE TO COUNSEL AND PARTIES IN INTEREST RELIEF FROM

## STAY MOTIONS – Revised 1/9/08.  Beginning January 22, 2008 (and until further

notice), Judge Bufford will require that a moving party on a relief from stay motion based on a promissory note bring to court for inspection *the original promissory note*. (Note: do not file the note with the court – bring it to the hearing). Production of the note will be excused only under circumstances such as those provided in Evidence Code Rule 1004 or Cal. Comm. Code § 3301 (as shown by competent evidence).  This requirement will apply because developments in the secondary market for mortgages and other security interests *cause the court to lack confidence that presenting a copy of a promissory note is sufficient to show that movant has a right to enforce the note or that it qualifies as a real party in interest* (as required by Rules 7017 and 9014). Pursuant to Cal. Comm. Code § 3412, an obligation to pay is only owing to a "person entitled to enforce an instrument" (as defined in § 3301). Thus, the court cannot admit copies of promissory notes in these circumstances under Evidence Code § 1003.

*Under Rule 1004: Admissibility of Other Evidence of Contents* - The original (note) is not required, and other evidence of the contents of a writing, recording, or photograph is

---

admissible if:

(1) *Originals lost or destroyed.* All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

(2) *Original not obtainable.* No original can be obtained by any available judicial process or procedure; or

(3) *Original in possession of opponent.* At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

(4) *Collateral matters.* The writing, recording, or photograph is not closely related to a controlling issue.

Again, Defendant has made mo such allegation under this section and therefore cannot establish a prima facie case to lift the automatic stay.

Moreover, even California Practice Guides for real estate attorneys and bankruptcy practitioners indicate that *one means of lifting the automatic stay in bankruptcy Court is to produce the original bearer paper note.* The relevant practice guide states:

"A prima facie case (for relief from the automatic stay) requires the movant to show that it is entitled to enforce the note under one of the following scenarios......."The note is endorsed in blank and the movant has possession of the original note."

See <u>Mortgages, Deed of Trust and Foreclosure Litigation,</u> (Fourth Edition), Roger Bernhardt, (2009), Section 7.106.   Here, the alleged Creditor and alleged owner of the Note, Deutsche, has not raised a colorable claim that it has standing to lift the stay by establishing that it holds the original note and their motion should therefore be denied.

Similarly, in <u>In re Weisband,</u> Case No. 4:09-bk-05175-EWH (Bankr. Ariz., March 29, 2010), the court denied a stay relief motion where the movant, even though in possession of the note "failed to demonstrate that the Note is properly payable to it."  Applying Arizona's version

Page 11

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

of the UCC, the *Weisband* court held that the evidence presented (including the two different versions of the note and an endorsement on a separate page) did not demonstrate the movant's standing.

Deutsche's lift-stay motion should therefore be denied <u>and their purported claim with respect to Debtors' home should be disallowed under 11 U.S.C. § 502(b)(1) as a claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."</u>

**(ii). <u>Deutsche Has Not Demonstrated That It Has The Right To Enforce The Note as it has not alleged, produced, or discussed having possession of the original promissory note at issue or a viable excuse for not producing such, and as such it is not the real party in interest and their motion to lift the stay must be denied.</u>**

For this same reasons set forth above, if Deutsche cannot show the original note, how can it claim to suffer an discrete and concrete injury of the note is not enforced?  For the reasons set forth above, Deutsche cannot be the real party in interest and cannot seek to lift the automatic stay, much less move forward and sell Debtor's property without any legal right to do such. The real property in interest in a relief from stay motion is a party <u>entitled to enforce the right</u> being asserted under applicable law. <u>Jacobson</u>, 402 B.R. at 366.

**(iii). <u>Even assuming arguendo that Deutsche can demonstrate That It Has The Right To Enforce (it has the original or satisfies Evidence Code Rule 1004) Deutsche lacks standing, and is not the real party in interest because it has no right to foreclose on the security.</u>**

In California, a party seeking to foreclose on a homeowner must establish that it has recorded its assignment of the deed of trust giving them the power to foreclose.  *Cal. Civ. Code section 2932.5* provides a condition precedent for an assignee of a Deed of Trust prior to

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

commencing a foreclosure. This section states:

> "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. ***The power of sale may be exercised by the assignee IF the assignment is duly acknowledged and recorded.***" (Emphasis added).

This is the reason Deutsche sought to have the deed of trust assigned at the 11th hour, after Debtor filed their bankruptcy petition. For the two reasons that follow, there is no valid recordable security interest.

(a) **Deutsche has not perfected its security interest in Debtor's property because MERS' purported assignment of the Deed of Trust on 4/30/10 was in violation of the automatic stay, and such attempt to perfect their interest is prohibited by law.**

Section 362 of the Bankruptcy Code states that the automatic stay is applicable to "*any act to create, perfect, or enforce any lien against the property of the estate*," "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. Section 362(a)(4)-(6).

Ninth Circuit cases are clear that such actions are *instantly void*. See Rein v. Providian Fin. Corp. 270 F.3d 895 (9th Cir. 2001) (actions taken in violation of the stay are void); and Contractors' State License Bd. Of Cal. v. Dunbar, 245 F.3d 1058 (9th Cir. 2001) (actions taken in violation of the automatic stay are void *ab initio*).

Here, the purported assignment of the Deed of Trust on 4/30/2010 was well after the filing of the Debtor's bankruptcy petition on 4/13/2010. Deutsche's use of this Assignment in its Motion to Lift the Stay is evident as they claim to have possession of the Deed of Trust and have

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

attached a copy as an exhibit.  Because the attempted assignment by MERS (an agent of

Deutsche pursuant to their MERS contracts) is an attempt to collect property from a prepetition

claim, the assignment must be a nullity and given no effect.  See Omega Environmental Inc. v.

Valley Bank NA 219 F.3d 984 (9th Cir. 2000) (a creditor with an unperfected security interest is

not entitled to relief from stay).

As such, Deutsche cannot claim to have the legal right to enforce the note or even

foreclose as they have neither physical possession of the promissory note (no standing / not a real

party) nor a valid recording of a deed of trust security instrument.

(b) **The purported assignment of the Deed of Trust from MERS to Deutsche Bank was a**

**mere assignment of a Deed of Trust (without the note also being assigned) and such**

**attempted act is a legal nullity and without legal significance.**

Quicken drafted the Deed of Trust and the Note, Plaintiff had no opportunity to negotiate

the terms of the instrument.  The note was secured by the Deed of Trust in favor of Quicken, and

The Deed of Trust stated that Quicken was the "lender" and MERS was the "beneficiary under

this security instrument."  After originating the loan, Quicken transferred to loan to some third

party without transferring or assigning the deed of trust.  The note and the security instrument

(the deed of trust) were therefore split and separated.

After the Bankruptcy was initiated, MERS sought to assign the security instrument to

Deutsche (who does not have sufficient evidence of note ownership and right to enforce the note)

and thus MERS was purporting to assign nothing more than a mere security instrument / deed of

trust. *Under California law, such attempted assignment of nothing but the deed of trust is a*

*meaningless endeavor.*

"An assignment of the mortgage without the obligation (note) is a nullity." See Hill v.

Favour, 84 P.2d 575 (Ariz.1938); Domarad v. Fisher & Burke, Inc., 76 Cal.Rptr. 529

(Cal.Ct.App.1969)(dictum).  "A Security interest cannot exist, much less be transferred,

independent from the obligation that it secures." See In re Leisure Time Sports, 194 B.R.

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

859 (9th Cir. B.A.P. 1996). "The mortgage becomes useless in the hands of one who does not also hold the obligation because only the holder of the obligation can foreclose." See In re Atlantic Mortg. Corp., 69 B.R. 321 (Bankr.E.D.Mich.1987). Indeed, an assignment of a mortgage without the debt transfers nothing. See 55 Am. Jur. 2d, Mortgages § 1002.

The essential desirability of avoiding a separation of the obligation and the mortgage has been explained by the late Professor Chester Smith of the University of Arizona College of Law: "*the note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow.*"

As set forth above, although Deutsche may have desired that the deed of trust be assigned to it and recorded (in an attempt to perfect its needed security interest) but for the reasons set forth above, such act was without any legal effect. As such, Deutsche cannot claim to have the legal right to foreclose as they have neither physical possession of the promissory note (no standing / not a real party) nor a valid recording of a deed of trust security instrument. The court should not allow a "pretender lender" to *pull a fast one* on the court and lift the automatic stay so the property can be sold with a windfall to this non-secured alleged "creditor."

**Additional Arguments:**

(1) **It is not clear that MERS has any ability to assign a Deed of Trust.** MERS is a software company that tracks loan ownership and servicing rights. It is not clear, and not established how MERS would have any authority to act either as: (a) a *beneficiary* of a loan (where it lends no money and collects no money) or as: (b) "a *nominee* of the lender its successors and assigns."

Debtor hereby alleges that it is informed and believes that Quicken (as is typical in securitized loans) caused Mortgage Electronic Registration Systems ("MERS") to go on title as the "Nominee Beneficiary" in order to hide the true identity of the successive

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

Page 15

Beneficiaries when and as the loan was sold. As loans are bought and sold and securitized into various investment tranches on the secondary market, it quickly becomes unclear whom the actual owner of the loan is because such transfers of the note are typically not recorded.

In most cases, as can be evidenced by a Debtor's Bankruptcy schedules, the borrower is only made aware of the identity of the LOAN SERVICER, and often the borrower is lead to believe by the loan servicer that it owns the loan. The identity of the "holder" or "owner" of the loan is diligently guarded uncovered only *perhaps* by a written request under RESPA or TILA.

In this case, Quicken purports to have sold the loan to Deutsche for securitization. The Deed of Trust (security for the debt), however, was not transferred or assigned to Deutsche at the time the note allegedly was.

This splitting of the note and the security instrument creates legal enforcement problems as set forth in this pleading (to wit, Deutsche holds a note without any security interest and MERS allegedly holds a security interest without any note that could go into default).

In this case, once the loan servicer (OneWest) failed to receive adequate monthly payments, it contacted MERS to inform of such and to have MERS figure out to whom the Deed of Trust should be assigned to for purposes of pursuing a foreclosure.

MERS thereafter acted to assign the Deed of Trust (acting as beneficiary of the Quicken loan) to Deutsche while debtor was in Bankruptcy - in order to attempt to allow Deutsche to perfect its security interest - in violation of the automatic stay.

Courts have been clear in holding that MERS is NOT a beneficiary of a loan just because it may say so in the Deed of Trust. See <u>Landmark National Bank v. Kessler</u>, 40 Kan. App. 2d 325, 192 P.3d 177 (2008) which stated:

> **"What is MERS's interest? MERS claims that it holds the title to the second mortgage, not the real estate. So it does, but only as a nominee. In terms of the roles**

---

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

that we've discussed in the mortgage business, MERS holds the mortgage but without rights to the debt. The district court found that MERS was merely an agent for the principal player, Millennia. While MERS objects to its characterization as an agent, it's a fair one."

The Kansas Supreme Court went on to state:

"MERS had no right to the underlying debt repayment secured by the mortgage; MERS did not even act as the servicing agent to receive the payments and remit them to the lender...........Its role fits the classic definition of an agent: one "'authorized by another to act for him, or entrusted with another's business.'" *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 534, 920 P.2d 947 (1996) (quoting Black's Law Dictionary 85 [4th ed. 1968])."

Although the Court held that MERS is *not a beneficiary* just because the Deed of Trust recites such, MERS also claims to be the *nominee* for the "lender and its successors and assigns" (in other words, MERS claims that in addition to being the "beneficiary" of the security instrument, it also acts as nominee, or agent on behalf of any of the 5,000 or so banks in the "MERS family" that allegedly appoint MERS as their agent by contract. See MERS v. Southwest Homes of Arkansas, 2009 Ark. LEXIS 458 (Ark., Apr. 23, 2009). In this case the court rejected the idea that MERS can act on behalf of any entity without having any actual knowledge of what the lender (as principal) might want done on its behalf, and the Court held:

*"We specifically reject the notion that MERS may act on its own, independent of the direction of the specific lender who holds the repayment interest in the security instrument at the time MERS purports to act."* "[A]n agent is authorized to do, and to do only, what it is reasonable for him to infer that the principal desires him to do *in the light of the principal's manifestation* and the facts as he knows or should know them at the time he acts." *Hot Stuff, Inc. v. Kinko's Graphic Corp.*, 50 Ark. App. 56, 59, 901 S.W.2d 854, 856 (1995) (citing Restatement (Second) of Agency § 33 (1958)). Nothing in the record shows that MERS had authority to act.

At any rate, as the thought of foreclosure entered the picture in this case, MERS attempted to act as if they were the actual beneficiary of the loan, or perhaps as nominee for Deutsche by

Page 17

attempting to assign the deed of trust to DEUTSCHE, reciting "FOR VALUE RECEIVED". See

Deutsche's Exhibit "D." But what value did MERS receive? MERS is not entitled to receive

anything of value, and on information and belief received none. In addition, the assignment of

Deed of Trust documents purports to assign "*all beneficial interest*" under the Deed of Trust.

Again, MERS is not a beneficiary of the loan (they are a software tracking company) and they

have absolutely no beneficial interest to assign in the first place. If MERS was acting as

nominee, was it acting at the specific direction of Quicken? Of Deutsche?

The purported Assignment of Deed of Trust also states: "*together with the note or notes*

*therein described or referred to, the money due and to become due thereon with interest, and all*

*rights accrued or to accrue under said deed of trust.*" Again, MERS has no power to assign the

note or notes and such attempted assignment is invalid, and done in violation of the automatic

stay.

Based on this failure to disclose, and the lack of consideration paid or received by MERS,

Debtor alleges that the Deed of Trust was never perfected and is a nullity as the MERS recording

of the Deed of Trust in 2006b separated the Debt from the Lien. In addition Debtor alleges that a

Deed of Trust cannot lawfully be held by a Nominee who has no financial interest in the

instrument without disclosing the identity of the actual Beneficiary, and that if a party with no

interest in the Note records it in their name the recorded deed is Nullity.

(2) **Deutsche's other attachments to the Motion to Lift the stay do not establish any**

**other valid proof of loan ownership.** The reference to loans in the "pool" (The "SECOND"

Exhibit A) do not establish anything meaningful as far as ownership of the loan is concerned or

right to enforce the loan.

(3) In regard to Exhibit "F" attached to Deutsche's motion, (**Schedule D – Creditors**

Page 18

---

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

**Holding Secured Claims**) it must be noted that Debtor's bankruptcy counsel who filed the Chapter 7 petition, did not discuss issues of securitized loans with Debtor and therefore Debtor cannot be bound by assertions made in the Bankruptcy schedules in regard to whether or not certain creditors may or may not be secured and Debtor hereby disputes such characterizations as set forth in this schedule.

## IV.
## CONCLUSION

Because Deutsche has failed to establish that it has physical possession of the original note, and has not properly or legally perfected any security interest in debtor's property, (i.e. no right to enforce the Note, much less enforce it by way of foreclosure), Deutsche lacks standing to file the lift-stay motion and is not the real party in interest. In addition, Deutsche failed to properly comply with local rules and notify co-debtor with a recorded security interest in the property Ms. (Carolyn Valdez) of its motion to lift the automatic stay, and as such, the motion is invalid on its face.

For these reasons, Deutsche's lift-stay motion should be denied *and their purported claim with respect to Debtors' home should be disallowed under 11 U.S.C. § 502(b)(1) as a claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."*

Dated: June 7, 2010                LAW OFFICES OF STEVEN C. VONDRAN, P.C.

By: _____
STEVEN C. VONDRAN, ESQ.
ATTORNEY FOR DEBTOR
DEANNA EILEEN RACHLIN

DEBTORS MOTION IN OPPOSITION TO DEUTSCHE MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN BANKRUPTCY AND MEMORANDUM OF POINTS AND AUTHORITIES

Exhibit "A"

*C039037*

MERS MIN: 100039046787171152

4678717115P
Valdez. Carolyn

August 16, 2006
[Date]

# InterestFirst℠ NOTE
Claremont
[City]

CA
[State]

1933 Rosemount Ave.
Claremont, CA 91711
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 510,000.00 (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is Quicken Loans Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
**(A) Time and Place of Payments**
I will make a payment every month. This payment will be for interest only for the first 120 months, and then will consist of principal and interest.

I will make my monthly payment on the 1st day of each month beginning on October 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on September 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 530483, Livonia, MI  48153-0483
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 2,868.75 for the first 120 months of this Note,
and thereafter will be in the amount of U.S. $ 3,877.86. The Note Holder will notify me prior to the date of change in monthly payment.

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment

MULTISTATE InterestFirst FIXED RATE NOTE-Single Family-Fannie Mae UNIFORM INSTRUMENT
1086304357
⊗-B36N (0210)
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3

Form 3271 3/01

Initials:

Q04678717115 0146 271 0103

*Exhibit B*

unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.



q04678717115  0140  271  0203


-836N (0210)

Form 3210  1/01
Initials ___

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____Carolyn Valdez_____   08/16/2006 (Seal)
-Borrower

Deanna E. Rachlin   08/16/2006 (Seal)
-Borrower

_____ (Seal)
-Borrower

**WITHOUT RECOURSE**
Pay To the Order of
_____ (Seal)
-Borrower

QUICKEN LOANS, INC.
By_____
SCOTT JOHNSON
CAPTURE MANAGER

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

q00678717115 0140 272 0303

*[Sign Original Only]*

-836N (0210)

Page 3 of 3

Form 3271 1/01

Exhibit "B"

Recording Requested By:
See 'Return To:' name

Return To:
Sharyn Labby
Quicken Loans Inc.
20555 Victor Parkway
Livonia, MI  48152

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
TSI ESCROW, INC.

BY _____

Prepared By:
Monique Mensah

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

4678717115P

MIN 100039046787171152

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    August 16, 2006
together with all Riders to this document.
(B) "Borrower" is Carolyn Valdez, a single woman, as to an undivided 70%
interest and Deanna E. Rachlin, a single woman, as to an undividedd 30%
interest, as tenants in common

Borrower is the trustor under this Security Instrument.
(C) "Lender" is Quicken Loans Inc.

Lender is a    Corporation
organized and existing under the laws of    the State of Michigan

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01

-6A(CA) (0005)    1086304437

Page 1 of 15    Initials:

VMP MORTGAGE FORMS - (800)521-7291

q04678717115 0233 272 0115

▲                    **This page is part of your document - DO NOT DISCARD**                    ▲

# 06 1849085

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
## 08/21/06 AT 08:00am

## TITLE(S) :

▲                                                                        ▲



L E A D    S H E E T

**FEE**                                                                **D.T.T.**

FEE $ 52 SS  16
DAF $ 2
C-20

**CODE**
**20**

**CODE**
**19**

**CODE**
**9**

NOTIFICATION SENT-44

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

▲                      **THIS FORM IS NOT TO BE DUPLICATED**                      ▲

Public Record

Exhibit C

2

Recording Requested By
ORANGE COAST TITLE

Recording Requested By.
See 'Return To ' name

06  1849085

Return To
Sharyn Labby
Quicken Loans Inc
20555 Victor Parkway
Livonia MI 48152

Prepared By
Monique Hensah

782876-16

------[Space Above This Line For Recording Data]------

4678717115P

# DEED OF TRUST

MIN 100039046787171152

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are
also provided in Section 16

(A) "Security Instrument" means this document, which is dated    August 16, 2006
together with all Riders to this document
(B) "Borrower" is Carolyn Valdez, a single woman, as to an undivided 70%
interest and Deanna E Rachlin, a single woman, as to an undividedd 30%
interest, as tenants in common

Borrower is the trustor under this Security Instrument
(C) "Lender" is Quicken Loans Inc

Lender is a                                 Corporation
organized and existing under the laws of        the State of Michigan

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01

-6A(CA) (0005)        1086304437
Page 1 of 15                    Initials

VMP MORTGAGE FORMS  (800)521-7291

Q046678717115 0233 272 0115

Public Record

3

4678717115P

Lender's address is 20555 Victor Parkway, Livonia, MI 48152

(D) "Trustee" is ORANGE COAST TITLE CO

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated    August 16, 2006
The Note states that Borrower owes Lender Five Hundred Ten Thousand and 00/100

Dollars

(U S $510,000 00          ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    September 1, 2036

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

Legal Attached

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

q04678717115  0233  272  0215

-6A(CA) (0005)                    Page 2 of 15                    Form 3005  1/01

06 1849085

08/21/06

ψ

4678717115P

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C.F.R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                    of                    Los Angeles
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF
SUBJECT TO COVENANTS OF RECORD

Parcel ID Number              8305-006-039                    which currently has the address of
1933 Rosemount Ave                                                          [Street]
                    Claremont                    [City], California 91711     [Zip Code]
("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

-6A(CA) (0005)                    Page 3 of 15                    Form 3005  1/01

06 1849085

q04678717115 0233 272 0315

Public Record

03/21/06

4678717115P

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U.S. currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be

q64678717115 0233 272 0415

-6A(CA) (0005)                    Page 4 of 15                    Form 3005  1/01

08/21/06

## 06 1849085

6

4678717115P

in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts
due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires,
shall furnish to Lender receipts evidencing such payment within such time period as Lender may require
Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to
be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement"
is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and
Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9
and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such
amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in
accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in
such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply
the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can
require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time
specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually
analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the
Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing
or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower
any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest
shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the
Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to
Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow,
as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to
Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12
monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall
notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund
to Borrower any Funds held by Lender

4.  Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions
attributable to the Property which can attain priority over this Security Instrument, leasehold payments or
ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To
the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless
Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable
to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith
by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to
prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings
are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating
the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien
which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

08/21/06

q04678717115 0233 272 0518

-6A(CA) (0008)                  Page 5 of 15                Initials: _____      Form 3005  1/01

06 1849085

Public Record

1

4678717115P

lien Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance Lender shall have the right to hold the policies and renewal certificates If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

q04678717115 0233 272 0615

-6A(CA) (0009)                    Page 6 of 15                    Initials: [signature]                    Form 3005  1/01

**06 1849085**

08/21/06

4678717115P

the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7. Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8. Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable

06/21/08

-6A(CA) (0005)      Page 7 of 15      Form 3005  1/01

06 1849085

Public Record

9

4678717115P

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

q04678717115 0233 272 0815

-6A(CA) (0008)

Page 8 of 15

Initials

Form 3005 1/01

06 1849085

4678717115P

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials

-6A(CA) (0005)    Page 9 of 15    Form 3005  1/01

08/21/06

Public Record

06 1849085

*II*

4678717115P

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

-6A(CA) (0005)          Form 3005 1/01

Initials

**06 1849085**

Public Record

12

4678717115P

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument. (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

08/21/06

-6A(CA) (0008)                    Page 11 of 15                              Form 3005   1/01

06 1849085

Public Record

*13*

4678717115P

requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21.  Hazardous Substances.**  As used in this Section 21. (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

08/21/06

IIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIII
q04678717115 0253 272 1215

-6A(CA) (0005)                    Page 12 of 16              Initials              Form 3005   1/01

06 1849085

4

4678717115P

**NON-UNIFORM COVENANTS** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



-6A(CA) (0009)                    Page 13 of 15              Initials              Form 3005  1/01

06 1849085

08/21/06

15

4678717115P

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses

_____    _____    08/16/2006 ___ (Seal)
                                    Carolyn Valdez                          -Borrower

_____    _____    08/16/2006 ___ (Seal)
                                    Deanna E  Rachlin                       -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower

_____ (Seal)    _____ (Seal)
                        -Borrower                            -Borrower

08/21/06

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
q04678717115 9233 372 1615

(VMP)-6A(CA) (0008)          Page 14 of 15          Form 3005  1/01

## 06 1849085

Public Record

*16*

4678717115P
**State of California**
**County of**          Los Angeles          } ss.

On      August 16, 2006      before me, *David W Cutting*, a notary public
personally appeared
Carolyn Valdez, a single woman, as to an undivided 70% interest and
Deanna E Rachlin, a single woman, as to an undividedd 30% interest, as
tenants in common

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal



DAVID W CUTTING
Comm # 1399061
NOTARY PUBLIC CALIFORNIA
San Bernardino County
My Comm. Expires Feb 8, 2007

_____ (Seal)

|| 004678717115 0233 372 1515

-6A(CA) (0005)·          Page 15 of 15          Initials ___          Form 3005  1/01

**06 1849085**

Order: Non-Order Search  Doc: LA:2006 01849085          Page 16 of 17          Created By:   Printed: 3/26/2010 8:36:49 AM PST

08/21/06

Order No 782835-16

## Exhibit "A"

Lot 2 of Tract No 28551, in the City of Claremont, County of Los Angeles, State of California, as per map recorded in Book 708, Pages 44 and 45 of Maps, in the Office of the County Recorder of said County

08/21/06

## 06 1849085

Public Record

Exhibit "C"

RECORDING REQUESTED BY:

LPS Default Title & Closing
When Recorded Mail Document To:

Meridian Foreclosure Service
8485 W. Sunset Rd., Suite 205
Las Vegas, NV 89113

_____

Space above line for Recorder's use only.

Trustee Sale No.:    15106CA

Title Order No.:    100202354-CA-MAI

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE INDYMAC INDX MORTGAGE LOAN TRUST 2006-AR14, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AR14 UNDER THE POOLING AND SERVICING AGREEMENT DATED OCTOBER 1, 2006 all beneficial interest under that certain Deed of Trust dated 08/16/06, executed by CAROLYN VALDEZ AND DEANNA E RACHLIN, as Trustor, to ORANGE COAST TITLE CO, as Trustee, and  Recorded on 08/21/06 as instrument No. 06 1849085 of Official Records in the County Recorder's office of LOS ANGELES County, California, describing land therein as: APN: 8305-006-039, SITUS: 1933 ROSEMOUNT AVE, CLAREMONT, CA 91711. LEGAL DESCRIPTION AS MORE FULLY DESCRIBED ON SAID DEED OF TRUST

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated:  4·26·10

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR QUICKEN LOANS INC

By: _____

Suchan Murray        **Authorized Signatory**

Exhibit D

State of _____Texas_____ )
                             ) ss
County of _____Travis_____ )

On _____APR 76_____, 2010, before me,

_____Krystle Price_____, the undersigned Notary Public,

personally appeared _____Suchan Murray_____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

KRYSTLE GISSELLE PRICE
Notary Public, State of Texas
My Commission Expires
June 15, 2011